# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF TEXAS
# AUSTIN DIVISION

| | |
|---|---|
| JESSIE (JAY) C. CROSSON, § <br>    *Plaintiff* § <br> § <br> v. § <br> §    Case No. 1:23-CV-00321-RP <br> § <br> TMF HEALTH QUALITY § <br> INSTITUTE, STEPHEN D. THOMAS, § <br> DEBBIE LOVATO, THOMAS § <br> MANLEY, ABC CORPORATIONS § <br> 1-5, and John Does #1-5, § <br>    *Defendants* § | |

## REPORT AND RECOMMENDATION
## OF THE UNITED STATES MAGISTRATE JUDGE

**TO:   THE HONORABLE ROBERT PITMAN**
      **UNITED STATES DISTRICT JUDGE**

Before the Court are Defendants' Rule 12(b)(6) Motion to Dismiss Amended Complaint, filed May 2, 2023 (Dkt. 49); Plaintiff's Opposition to Defendants' Motion to Dismiss Plaintiff's Amended Complaint, filed May 26, 2023 (Dkt. 54); and Defendants' Reply in Support of Rule 12(b)(6) Motion to Dismiss Amended Complaint, filed June 2, 2023 (Dkt. 55). By Text Order entered May 31, 2023, the District Court referred the motion to this Magistrate Judge for a report and recommendation, pursuant to 28 U.S.C. § 636(b)(1)(B), Federal Rule of Civil Procedure 72, and Rule 1(d) of Appendix C of the Local Court Rules of the United States District Court for the Western District of Texas.

## I.   Background

New Jersey resident Jay Crosson brings this retaliatory discharge suit under the New Jersey Law Against Discrimination against his former employer, TMF Health Quality Institute ("TMF"). In his Amended Complaint, Crosson alleges that he was fired "for objecting to, and attempting to remediate, racial prejudice and discriminatory practices occurring in the workplace." Dkt. 11 at 1.

**A. Facts**

TMF is an Austin, Texas-based nonprofit consulting company "in the business of improving care provided to Medicare beneficiaries through cooperative efforts with the health care community." *Id.* ¶ 32. From September 2018 through October 2020, Crosson was employed by TMF as a Quality Improvement Executive for Research and Assessment. *Id.* ¶ 1. Crosson alleges that TMF recruited, interviewed, and hired him while he was in New Jersey. *Id.* ¶¶ 14-16. During his employment with TMF, Crosson "worked almost exclusively from his office in Middlesex County, New Jersey, where he resides." *Id.* ¶ 17. Crosson alleges that "Defendants expected Plaintiff to conduct his regular duties and maintain his productivity from his New Jersey office," and that "it was an express and substantial condition of Plaintiff's employment that he work from his office in New Jersey." *Id.* ¶ 19. Crosson further emphasizes that his business address was in New Jersey, and that TMF provided him with a New Jersey-based cell phone, a company-issued laptop, and remote access software so that he could "work from his desk in New Jersey." *Id.* ¶¶ 18, 19. Crosson further alleges that during his employment with TMF, he paid New Jersey income taxes, paid into the New Jersey unemployment compensation system, and had medical insurance from a New Jersey-based provider. *Id.* ¶ 13.

Crosson also alleges that TMF regularly conducts business in New Jersey through its wholly owned subsidiary, C2C Innovative Solutions, Inc., which has the same Chief Executive Officer as TMF. *Id.* ¶ 23. Crosson alleges that he helped negotiate the contract providing business development software for both TMF and C2C from his New Jersey office. *Id.*

Crosson, who is white and Jewish, alleges that during his employment, "TMF fostered a hostile and retaliatory work environment wrought with discriminatory and racist conduct committed by upper-management employees." *Id.* ¶ 39. He alleges: "At its core, the company suppressed minority employees, failed to provide minority employees with job advancement opportunities,

2

failed to cultivate a culture of inclusion, and disproportionately promoted the careers of Caucasian employees." *Id.* ¶ 41. He alleges that, after "noticing a number of red flags, and as a part of his executive position with the company, Plaintiff repeatedly attempted to broaden the company's antiquated policies and initiatives in connection with diversity matters." *Id.* ¶ 54. Crosson contends that he held conference calls, sent emails, and made numerous calls to TMF management from his New Jersey office in an attempt to "remediate the company's lack of equal opportunity measures and its refusal to make any real strides towards improving company diversity." *Id.* ¶ 40. Crosson alleges that after he complained about the lack of diversity and discriminatory conduct, TMF retaliated against him by terminating his employment on October 13, 2020. *Id.* ¶ 137. Crosson alleges that TMF sent him the termination letter "via email and in hard copy to his New Jersey office." *Id.*

### B. Procedural Background

On November 10, 2020, Crosson filed this suit in New Jersey state court against TMF; Thomas Manley, TMF CEO; Stephen D. Thomas, Crosson's direct supervisor and Chief Human Resources Officer; and Debbie Lovato, head of Business Development for TMF. *Id.* ¶ 4. Crosson's suit alleges two claims under the New Jersey Law Against Discrimination ("NJLAD"), N.J. STAT. § 10:5-12(d): (1) retaliation/improper reprisal against TMF, and (2) aiding and abetting liability against the individual defendants.[1] Defendants removed the case to the United States District Court for the District of New Jersey on the basis of diversity jurisdiction pursuant to 28 U.S.C. §§ 1441(c) and 1332(a) and quickly moved to dismiss Crosson's suit. Dkts. 1, 6. After Crosson filed an Amended Complaint, the New Jersey District Court dismissed Defendants' first motion to dismiss as moot. Text Order entered January 20, 2021.

---

[1] *Crosson v. TMF Health Quality Inst.*, No. MID-L-7812-20 (N.J. Super. Ct. Law Div. Middlesex County, Nov. 10, 2020) (Dkt. 1-1 at 5).

Defendants filed a second motion to dismiss, seeking dismissal of Crosson's Amended Complaint for lack of personal jurisdiction, improper venue, and failure to state a claim. Dkt. 18. Defendants argued that Crosson failed to demonstrate that the New Jersey District Court had personal jurisdiction over Defendants, who are all Texas residents. Dkt. 19 at 4. The New Jersey District Court agreed that it did not have personal jurisdiction over the Texas Defendants. Dkt. 27 at 13.[2] But instead of dismissing the case under Rule 12(b)(2), the court transferred the case to this District pursuant to 28 U.S.C. § 1631.[3] *Id.* at 13-16; Dkt. 28.

In the Rule 12(b)(6) Motion to Dismiss now before the Court, Defendants argue that Crosson's claims under the NJLAD are precluded under Texas law.

## II.   Standard of Review

Rule 12(b)(6) allows a party to move to dismiss an action for failure to state a claim on which relief can be granted. In deciding a Rule 12(b)(6) motion to dismiss for failure to state a claim, the court accepts "all well-pleaded facts as true, viewing them in the light most favorable to the plaintiff." *In re Katrina Canal Breaches Litig.*, 495 F.3d 191, 205 (5th Cir. 2007) (citation omitted). The Supreme Court has explained that a complaint must contain sufficient factual matter "to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678.

---

[2] Because the New Jersey District Court found that it did not have personal jurisdiction over the Defendants, it did not reach Defendants' merit-based arguments for dismissal under Rule 12(b)(6). Dkt. 27.

[3] Section 1631 provides that if a court lacks jurisdiction over a case, it "shall, if it is in the interest of justice, transfer such action or appeal to any other such court . . . in which the action or appeal could have been brought at the time it was filed or noticed." 28 U.S.C. § 1631.

4

> While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level, on the assumption that all the allegations in the complaint are true (even if doubtful in fact).

*Twombly*, 550 U.S. at 555 (cleaned up). In determining whether a plaintiff's claims survive a Rule 12(b)(6) motion to dismiss, the factual information to which the court addresses its inquiry is generally limited to the (1) the facts set forth in the complaint, (2) documents attached to the complaint, and (3) matters of which judicial notice may be taken under Federal Rule of Evidence 201. *Walker v. Beaumont Indep. Sch. Dist.*, 938 F.3d 724, 735 (5th Cir. 2019).

### III.   Analysis

Defendants argue that Crosson's retaliation claims under the NJLAD should be dismissed under Texas choice of law rules. Defendants contend that under choice of law rules, Texas law should apply in this transferred diversity case, not New Jersey law. Dkt. 49 at 2. Thus, Defendants argue that Crosson should be precluded from asserting any claims under the NJLAD and must pursue his claims under the Texas Commission on Human Rights Act ("TCHRA"). In the alternative, Defendants argue that even if Crosson is permitted to proceed under the NJLAD, his claims should be dismissed because the NJLAD applies only to New Jersey employees and Crosson should be considered a Texas employee because he was employed by a Texas company.

#### A. Choice of Law

Deciding which state's laws should govern an issue "is a question of law for the court to decide." *Hughes Wood Prods., Inc. v. Wagner*, 18 S.W.3d 202, 204 (Tex. 2000). "Choice-of-law decisions can be resolved at the motion to dismiss stage when factual development is not necessary to resolve the inquiry." *Energy Coal v. CITGO Petroleum Corp.*, 836 F.3d 457, 459 (5th Cir. 2016).

Under *Erie R. Co. v. Tompkins*, 304 U.S. 64, 78 (1938), "federal courts sitting in diversity apply state substantive law and federal procedural law." *Gasperini v. Ctr. for Humans., Inc.*, 518 U.S. 415, 427 (1996). "The nub of the policy that underlies *Erie R. Co. v. Tompkins* is that for the same transaction the accident of a suit by a non-resident litigant in a federal court instead of in a State court a block away should not lead to a substantially different result." *Guar. Tr. Co. of N.Y. v. York*, 326 U.S. 99, 109 (1945).

Related to the *Erie* doctrine, a federal court sitting in diversity "ordinarily must follow the choice-of-law rules of the State in which it sits." *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist. of Tex.*, 571 U.S. 49, 65 (2013) (citing *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, (1941)). A court "is not free to follow its own federal rule simply because the issue arises in federal court." *Danforth v. Minn.*, 552 U.S. 264, 307 n.3 (2008). This general rules applies to cases transferred under 28 U.S.C. §§ 1406(a) and 1631. *Franco v. Mabe Trucking Co.*, 3 F.4th 788, 793 n.4, 796 (5th Cir. 2021).[4]

Because the New Jersey District Court transferred this action to this Court for lack of personal jurisdiction under Section 1631, the Court must apply Texas's choice of law rules. *Id.*[5]

---

[4] There is an exception to the rule for transfers under 28 U.S.C. § 1404(a), requiring that the state law applicable in the original court also apply in the transferee court. *Ferens v. John Deere Co.*, 494 U.S. 516, 522 (1990); *Van Dusen v. Barrack*, 376 U.S. 612, 821 (1964). The exception is necessary to prevent "defendants, properly subjected to suit in the transferor State, from invoking § 1404(a) to gain the benefits of the laws of another jurisdiction." *Atl. Marine*, 571 U.S. at 65 (cleaned up).

[5] *See also Nat'l Union Fire Ins. Co. of Pittsburgh, Pa. v. Am. Eurocopter Corp.*, 692 F.3d 405, 408 n.3 (5th Cir. 2012) ("The choice-of-law rules of the transferee state apply if a diversity suit was transferred from a district court that had no personal jurisdiction over the defendant or where venue was otherwise improper."); *Ellis v. Great Sw. Corp.*, 646 F.2d 1099, 1109-10 (5th Cir. 1981) ("[W]e hold that following a section 1406(a) transfer, regardless of which party requested the transfer or the purpose behind the transfer, the transferee court must apply the choice of law rules of the state in which it sits."); *EH Nat'l Bank v. Tran*, No. 3:16-CV-00083-M, 2016 WL 4138634, at *5 (N.D. Tex. Aug. 4, 2016) ("Because the district court in Montana transferred this action to this Court under 28 U.S.C. § 1631, the Court will apply Texas's choice-of-law rules, rather than those the transferor court would have applied.").

"Texas courts use the analysis described in the Restatement (Second) of Conflicts of Laws to resolve choice-of-law issues and select the particular substantive law that governs a case." *Stevenson v. Ford Motor Co.*, 608 S.W.3d 109, 116 (Tex. App.—Dallas 2020, no pet.). But before applying that analysis, the Court must determine whether there is a conflict between the NJLAD and the TCHRA. *See Bailey v. Shell W. E&P, Inc.*, 609 F.3d 710, 722 (5th Cir. 2010) ("Texas courts initially determine whether there is a conflict between Texas law and the other potentially applicable law."); *R.R. Mgmt. Co. v. CFS La. Midstream Co.*, 428 F.3d 214, 222 (5th Cir. 2005) ("Where there are no differences between the relevant substantive laws of the respective states, there is no conflict, and a court need not undertake a choice of law analysis.").

### B. Conflict of Laws

A conflict of laws exists if the conflict is such that it "actually affects the outcome of an issue." *Toyota Motor Co. v. Cook*, 581 S.W.3d 278, 283 (Tex. App.—Beaumont 2019, no pet.); *see also Fearrington v. Bos. Sci. Corp.*, 410 F. Supp. 3d 794, 805 (S.D. Tex. 2019) (finding that a conflict between Texas and Florida laws existed on an issue that affected the outcome of plaintiff's claim); *SAVA gumarska in kemijska industria d.d. v. Advanced Polymer Scis., Inc.*, 128 S.W.3d 304, 314 (Tex. App.—Dallas 2004, no pet.) (stating that there would be no conflict of laws "[i]f the result would be the same under the laws of either jurisdiction").

As stated, Crosson alleges a retaliatory discharge claim against TMF and an aiding and abetting retaliation claim against the individual defendants under the NJLAD. The NJLAD generally prohibits employment discrimination against individuals on the basis of race, color, national origin, age, sex, disability, etc., and retaliation against individuals who oppose discriminatory practices. N.J. STAT. § 10:5-12. Like the NJLAD, the Texas Commission on Human Rights Act ("TCHRA") prohibits employment discrimination against on the basis of "race, color, disability, religion, sex, national origin, or age" and retaliation for opposing a discriminatory practice. TEX. LAB. CODE

7

§§ 21.051, 21.055. Both statutes were enacted "to address the specific evil of discrimination and retaliation in the workplace." *Prairie View A & M Univ. v. Chatha*, 381 S.W.3d 500, 504 (Tex. 2012); *see also Nini v. Mercer Cnty. Cmty. Coll.*, 995 A.2d 1094, 1100 (N.J. 2010) ("The [N]LAD is remedial social legislation whose overarching goal is to eradicate the 'cancer of discrimination.'"). But there are substantial differences between the two laws that would affect the outcome of Crosson's claims in this case.

First, while only "employers" may be held liable under the TCHRA,[6] supervisory employees may be liable under the anti-retaliation provisions of the NJLAD.[7] *See McDermott v. CareAllies, Inc.*, 503 F. Supp. 3d 225, 238 (D.N.J. 2020) ("NJLAD retaliation may be directly asserted against an individual defendant."); *K.J. v. Greater Egg Harbor Reg'l High Sch. Dist. Bd. of Educ.*, 431 F. Supp. 3d 488, 515 (D.N.J. 2019) (stating that "persons may be held liable for aiding and abetting underlying violations of the NJLAD"). Crosson's aiding and abetting claims against the individual defendants in this case would be precluded under the TCHRA. *See Lopez v. Beard & Lane, P.C.*, No. H-23-2895, 2023 WL 6283325, at *3 (S.D. Tex. Sept. 26, 2023) (dismissing retaliation claim against supervisor because he was not an "employer"); *Crisp v. Sears Roebuck & Co.*, No. SA-13-CA-962-PM, 2015 WL 12977378, at *16 (W.D. Tex. Mar. 4, 2015) (dismissing aiding and abetting

---

[6] *See* TEX. LAB. CODE § 21.055 (prohibiting an "employer, labor union, or employment agency" from retaliating against an employee for opposing a discriminatory practice), § 21.056 (prohibiting an "employer, labor union, or employment agency" that "aids, abets, incites, or coerces a person to engage in a discriminatory practice"); *Medina v. Ramsey Steel Co.*, 238 F.3d 674, 686 (5th Cir. 2001) (stating that "supervisors and managers are not considered employers under the Texas Labor Code" and cannot be held liable for discrimination); *Marabella v. Autonation U.S.A. Corp.*, 88 F. Supp. 2d 750, 752 (S.D. Tex. 2000) ("Texas state and federal courts have uniformly held that supervisory personnel are not liable in their individual capacity under the TCHRA.").

[7] *See* N.J. Stat. § 10:5-12(d) (prohibiting "any person to take reprisals against any person because that person has opposed any practices or acts forbidden under this act."); *id.* § 10:5-12(e) (prohibiting "any person, whether an employer or an employee or not, to aid, abet, incite, compel or coerce the doing of any of the acts forbidden under the act").

8

claim against individual defendant who was not an "employer" under § 21.056 of the TCHRA), *aff'd*, 628 F. App'x 220 (5th Cir. 2015).

The TCHRA also "does not apply to an employer with respect to the employment of a person outside this state." TEX. LAB. CODE § 21.111. Thus, if the evidence shows that Crosson was working in New Jersey, as he alleges, his claims under the TCHRA would fail as a matter of law. *See Hocevar v. Molecular Health, Inc.*, 593 S.W.3d 764, 769 (Tex. App.—Beaumont 2019, no pet.) ("A TCHRA plaintiff must prove that their employer employed them within Texas.").

In addition, the TCHRA requires administrative exhaustion; the NJLAD does not.[8] The statute of limitations under the TCHRA also is much shorter than under the NJLAD. *See* TEX. LABOR CODE § 21.202 (providing that "a complaint under this subchapter must be filed not later than the 180th day after the date the alleged unlawful employment practice occurred"); *Sharp v. Kean Univ.*, 153 F. Supp. 3d 669, 676 n.4 (D.N.J. 2015) (stating that NJLAD has a two-year statute of limitations). Because Crosson did not exhaust his administrative remedies with the Texas Workplace Commission and the alleged retaliation occurred more than 180 days ago, his claims under the TCHRA would be barred.

Based on these conflicts between the two statutes, the result of Crosson's claims under the TCHRA would not be same as under the NJLAD. Therefore, a genuine conflict of law exists, and the Court must apply Texas's choice of law analysis to determine which law to apply.

---

[8] *Compare D.G. v. Somerset Hills Sch. Dist.*, 559 F. Supp. 2d 484, 503 n.7 (D.N.J. 2008) ("NJLAD does not require a plaintiff to exhaust any administrative remedies before commencing an action.") *with Gorman v. Verizon Wireless Tex., L.L.C.*, 753 F.3d 165, 169 (5th Cir. 2014) (stating that a plaintiff must take certain administrative steps before pursuing judicial remedies).

9

### C. Texas Choice of Law Analysis

As stated, courts in Texas apply the analysis described in Section 6 of the Restatement of Conflict of Laws to determine which substantive law governs. *Stevenson*, 608 S.W.3d at 116. That section provides:

> (1) A court, subject to constitutional restrictions, will follow a statutory directive of its own state on choice of law.
>
> (2) When there is no such directive, the factors relevant to the choice of the applicable rule of law include
>
>   (a) the needs of the interstate and international systems,
>
>   (b) the relevant policies of the forum,
>
>   (c) the relevant policies of other interested states and the relative interests of those states in the determination of the particular issue,
>
>   (d) the protection of justified expectations,
>
>   (e) the basic policies underlying the particular field of law,
>
>   (f) certainty, predictability and uniformity of result, and
>
>   (g) ease in the determination and application of the law to be applied.

Restatement (Second) of Conflict of Laws § 6 (Am. Law Inst. 1971) ("Restatement").

The Court first must determine whether Texas has a "statutory directive" or, in other words, a "clear choice-of-law determination by the legislature." *Stevenson*, 608 S.W.3d at 116-17 (stating that the Restatement "provides two sequential analyses, the second of which is conditioned on the inapplicability of the first").[9]

---

[9] *See also Sommers Drug Stores Co. Emp. Profit Sharing Tr. v. Corrigan*, 883 F.2d 345, 353 (5th Cir. 1989) (stating that "a court should only resort to the § 6 guidelines in the absence of either a valid contractual agreement between the parties regarding the applicable law, or a local statutory provision controlling the disposition of the choice of law question") (quoting *American Home Assurance Co. v. Safeway Steel Products Co., Inc.*, 743 S.W.2d 693, 697 (Tex. App.—Austin 1987, writ denied)); *Citizens Ins. Co. of Am. v. Daccach*, 217 S.W.3d 430, 443 (Tex. 2007) ("[T]he factors in section 6(2) of the Restatement do not come into play if there is statutory guidance that the law is intended to govern the transaction.").

10

### 1. The TCHRA Has a Statutory Directive

A TCHRA plaintiff must prove that the defendant employed them within Texas. The TCHRA "does not apply to an employer with respect to the employment of a person outside this state." TEX. LABOR CODE § 21.111. "The plain meaning of the statute is that the TCHRA only applies to an employer when the subject employment was in Texas." *Hocevar*, 593 S.W.3d at 769; *see also Noel v. Shell Oil Co.*, 261 F. Supp. 3d 752, 765 (S.D. Tex. 2017) ("TCHRA offers no extraterritorial coverage, explicitly stating that it does not apply to 'the employment of a person outside [Texas].'"), *R. & R. adopted*, 2017 WL 4082314 (S.D. Tex. Sept. 13, 2017); *Herrera v. NBS, Inc.*, 759 F. Supp. 2d 858, 864 (W.D. Tex. 2010) ("Just as Title VII does not afford protections to those employed outside of the United States, the Texas Labor Code 'does not apply to an employer with respect to the employment of a person outside [Texas].'").

"The court should give a local statute the range of application intended by the legislature when these intentions can be ascertained and can constitutionally be given effect." Restatement § 6 cmt. 1(b). Therefore, "if the legislature intended that the statute should be applied only to acts taking place within the state, the statute should not be given a wider range of application." *Id.*

Because the TCHRA's "intended range of application" is apparent on its face and applies only to employees employed within Texas, the Court applies it as "intended by the legislature," which means it would not be applicable to Crosson if he was employed in New Jersey. *Id.* Accordingly, the Court must determine whether Crosson plausibly alleges that he was employed in New Jersey; if so, the TCHRA would not apply. This Court has applied a "center of gravity test," considering the following factors:

> (1) the site of the creation of the employment relationship including where the terms of employment were negotiated; (2) the intent of the parties concerning the location of the employment; (3) the locations of the reporting relationships for the position at issue; (4) the actual locations where the employee performed duties and

11

>received benefits as well as the relative amount of time the employee spent at each of these sites; and (5) the location of employee's domicile.

*Herrera*, 759 F. Supp. 2d at 864.

In support of his argument that he was employed in New Jersey during the relevant time, Crosson alleges that: (1) he was recruited, interviewed and hired while he was in New Jersey, Dkt. 11 ¶¶ 14-16; (2) "it was an express and substantial condition of Plaintiff's employment that he work from his office in New Jersey," *id.* ¶ 19; (3) he communicated with Defendants via email, videoconference, and telephone to discuss and perform work-related matters while working out of his New Jersey office, *id.* ¶ 20; (4) he worked almost exclusively from his office in New Jersey, "only visited Texas on company business a handful of times between 2018 and 2019," and paid New Jersey income taxes, *id.* ¶¶ 13, 17, 27; and (5) his residence has been Middlesex, New Jersey for the last 33 years, *id.* ¶ 12.

The Court finds that Crosson has plausibly alleged he was employed in New Jersey, not Texas, during his employment with TMF. *See Herrera*, 759 F.Supp.2d at 866-67. Therefore, the TCHRA does not apply to Crosson. But before applying New Jersey law, the Court must determine whether there are any constitutional restrictions from doing so.

### 2. No Constitutional Restrictions Exist

Defendants argue that "constitutional considerations indicate that the inquiry between determinations of the proper exercise of personal jurisdiction mirror those for an analysis of a constitutional choice of law consideration." Dkt. 55 at 2. Therefore, they contend, the New Jersey District Court's "determination that it could not constitutionally exercise personal jurisdiction over Defendants is the law of the case and should operate to preclude application of New Jersey law." *Id.* The Court disagrees.

The law of the case doctrine "posits that when a court decides upon a rule of law, that decision should continue to govern the same issues in subsequent stages in the same case." *Arizona v. California*, 460 U.S. 605, 618 (1983). "Federal courts routinely apply law-of-the-case principles to transfer decisions of coordinate courts." *Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 816 (1988). But "[t]he doctrine of law of the case comes into play only with respect to issues previously determined." *Quern v. Jordan*, 440 U.S. 332, 348 n.18 (1979). The doctrine "applies only to issues that were actually decided, rather than all questions in the case that might have been decided, but were not." *Clifford v. Gibbs*, 298 F.3d 328, 331 (5th Cir. 2002). An issue is "actually decided" if the court explicitly decided it or necessarily decided it by implication. *Af-Cap, Inc. v. Republic of Congo*, 462 F.3d 417, 425 (5th Cir. 2006).

The New Jersey District Court decided only whether it had personal jurisdiction over Defendants. Because it did not rule on choice of law, the law of the case doctrine does not apply. *See id.*

The choice of law analysis is "different and distinct from the personal jurisdiction analysis." *Rimkus Consulting Grp., Inc. v. Balentine*, 693 F. Supp. 2d 681, 687 (S.D. Tex. 2010). The specific personal jurisdiction analysis "focuses on the relationship among the defendant, the forum, and the litigation." *Walden v. Fiore*, 571 U.S. 277, 284 (2014). For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State," and "the relationship must arise out of contacts that the 'defendant *himself*' creates with the forum State. Due process limits on the State's adjudicative authority principally protect the liberty of the nonresident defendant—not the convenience of plaintiffs or third parties." *Id.* (citations omitted).

In contrast, the choice of law analysis under the center of gravity test focuses on the *plaintiff's* contacts with Texas. The analysis does not mirror the personal jurisdiction analysis. *See In re*

13

*Domestic Drywall Antitrust Litig.*, 399 F. Supp. 3d 280, 301 n.29 (E.D. Pa. 2019) (rejecting defendant's "attempt to draw connections between" personal jurisdiction over an out-of-state defendant and "the application of a state's substantive law to out-of-state plaintiffs"). The constitutional due process concerns that the New Jersey District Court had in exercising personal jurisdiction over out-of-state defendants no longer exist because this case has been transferred to Defendants' home state.

Defendants also argue that applying the NJLAD in this case would violate their due process rights because "for a State's substantive law to be selected in a constitutionally permissible manner, that State must have a significant contact or significant aggregation of contacts, creating state interests, such that choice of its law is neither arbitrary nor fundamentally unfair." Dkt. 49 at 7 (quoting *Allstate Ins. Co. v. Hague*, 449 U.S. 302, 312-13 (1981)). Because Crosson has been a resident of New Jersey for more than 30 years and alleges that he was injured while working and living in New Jersey, applying New Jersey law here would not violate the Due Process Clause. *See id.* (finding that applying Minnesota law in wrongful death/uninsured motorist case would not violate due process where deceased had worked in Minnesota for 16 years preceding his death); *Bowers v. Nat'l Collegiate Athletic Ass'n*, 151 F. Supp. 2d 526, 534 (D.N.J. 2001) (holding that applying NJLAD to nonresident associations did not violate their due process rights when plaintiff was a New Jersey resident who alleged she was discriminated against in New Jersey).

Defendants identify no valid constitutional concerns regarding applying the NJLAD. Accordingly, the Court follows the Texas statutory directive that the TCHRA does not apply to individuals working outside of Texas. Because Crosson was working in New Jersey during his employment with TMF, the NJLAD applies in this transferred case.

14

## D. Crosson Alleges Plausible Claims under the NJLAD

Finally, Defendants argue that even if New Jersey law applies in this case, Crosson's NJLAD claims should be dismissed because the NJLAD "only applies to employees employed in New Jersey" and "does not apply to Plaintiff's employment with TMF, which is a Texas company with no links to New Jersey other than Plaintiff's residence there." Dkt. 49 at 10-11.

In general, a plaintiff may only pursue an employment discrimination or retaliation claim under the NJLAD if he was employed in New Jersey. *See Peikin v. Kimmel & Silverman, P.C.*, 576 F. Supp. 2d 654, 657 (D.N.J. 2008) ("New Jersey courts have consistently applied the law of the *state of employment* to claims of workplace discrimination, and therefore only apply the NJLAD if the claimant was employed in New Jersey.") (citing cases); *see also Kunkle v. Republic Bank*, No. 1:21-CV-20245-NLH, 2023 WL 4348688, at *5 (D.N.J. July 5, 2023) ("[T]he NJLAD is only applicable to situations in which the work location is in New Jersey."). But New Jersey law does not determine an employee's place of employment solely on where the employer's headquarters are located, as Defendants suggest. Instead, "it is where Plaintiff worked, rather than where Defendant was located or where Plaintiff occasionally traveled to for business, that is significant." *Shah v. Am. Airlines, Inc.*, No. CV 17-6298, 2022 WL 3098087, at *6 (D.N.J. Aug. 4, 2022), *aff'd*, 2023 WL 2945901 (3d Cir. Apr. 14, 2023), *cert. denied*, 2023 WL 6378724 (U.S. Oct. 2, 2023).

Under New Jersey law, Crosson is permitted to bring claims under the NJLAD against an out-of-state employer such as TMF if he demonstrates that he actually worked in New Jersey. *See Bowers*, 151 F. Supp. 2d at 531 (stating that it is "relatively clear . . . that an 'out of state' defendant may be held liable under the NJLAD if New Jersey's contacts to the factual scenario are sufficient"); *McDonnell v. State of Ill.*, 748 A.2d 1105, 1106-07 (N.J. 2000) (applying NJLAD to State of Illinois where New Jersey resident worked in Illinois Department of Revenue's New Jersey field office). Because Crosson alleges that he worked almost exclusively from his

15

office in New Jersey during his employment with TMF, he is permitted to bring employment retaliation claims under the NJLAD.

## IV.     Conclusion

New Jersey resident Jesse Crosson chose to file an employment discrimination suit under his state's anti-discrimination statute in New Jersey state court. *See Elam v. Kansas City S. Ry. Co.*, 635 F.3d 796, 803 (5th Cir. 2011) ("A plaintiff is the master of his complaint and may allege only state law causes of action, even when federal remedies might also exist."). Defendants then removed the case to federal court, argued the New Jersey District Court lacked personal jurisdiction over them, and had the case transferred to their home district. Defendants now argue that under choice of law principals, the TCHRA should apply, not the NJLAD under which Crosson sued. Under Texas choice of law rules, the NJLAD applies and Defendants assert no viable argument for dismissal.

## V.     Recommendation

For these reasons, this Magistrate Judge **RECOMMENDS** that the District Court **DENY** Defendants' Rule 12(b)(6) Motion to Dismiss Amended Complaint (Dkt. 49).

The Court **FURTHER ORDERS** that this case be removed from the Magistrate Court's docket and returned to the docket of the Honorable Robert Pitman.

## VI.     Warnings

The parties may file objections to this Report and Recommendation. A party filing objections must specifically identify those findings or recommendations to which objections are being made. The District Court need not consider frivolous, conclusive, or general objections. *See Battle v. United States Parole Comm'n*, 834 F.2d 419, 421 (5th Cir. 1987). A party's failure to file written objections to the proposed findings and recommendations contained in this Report within fourteen (14) days after the party is served with a copy of the Report shall bar that party from de novo

review by the District Court of the proposed findings and recommendations in the Report and, except on grounds of plain error, shall bar the party from appellate review of unobjected-to proposed factual findings and legal conclusions accepted by the District Court. *See* 28 U.S.C. § 636(b)(1)(c); *Thomas v. Arn*, 474 U.S. 140, 150-53 (1985); *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428-29 (5th Cir. 1996) (en banc).

**SIGNED** on October 24, 2023.

                                                SUSAN HIGHTOWER
                                                UNITED STATES MAGISTRATE JUDGE